UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Civil Action Number:**

JESUS GONZALEZ

      Plaintiff,
vs.

STEAK 'N SHAKE INC.
d/b/a Steak 'N Shake #479

      Defendant.
_____/

**COMPLAINT FOR INJUNCTIVE RELIEF**

Plaintiff Jesus Gonzalez ("Plaintiff"), by and through his undersigned counsel, hereby sues Defendant Steak 'N Shake Inc. ("Defendant") doing business as Steak 'N Shake #479 for injunctive relief pursuant to 42 U.S.C. §§12181-12189 of the Americans with Disabilities Act ("ADA") and 28 C.F.R. Part 36 and alleges:

**JURISDICTION**

1. This is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§12181-12189. This Court is vested with original jurisdiction under 28 U.S.C. §1331.

2. Venue is proper in the Court, pursuant to 28 U.S.C. §1391(b) in that all events giving rise to this lawsuit occurred within the Southern District of Florida and the subject premises is located within the jurisdiction of this Court.

3. Defendant is authorized to conduct, and is conducting, business within the State of Florida and within the jurisdiction of this court.

## PARTIES

4.	Plaintiff Jesus Gonzalez is a resident of the state of Florida. Plaintiff has a "qualified disability" under the ADA as he is disabled with neuropathy and nerve damage due to radiation and utilizes a wheelchair for mobility. Plaintiff's disability is defined in 42 US Code §12102(1)(A), (2) and in 28 C.F.R. §36.105(b)(2) and 28 C.F.R. §36.105(2)(iii)(D). Plaintiff is also a "tester" to determine whether public accommodations are in compliance with the ADA/ADAAG.

5.	Defendant Steak 'N Shake Inc. d/b/a Steak N Shake #479 is a foreign for profit corporation authorized to transact business in Florida. On information and belief, Defendant is the subsidiary of Steak 'n Shake Operations, Inc. which is itself a subsidiary of Biglari Holdings Inc. a conglomerate holding company. Steak 'n Shake Operations, Inc. is an American casual restaurant chain which was founded in 1934 and has 414 corporate and 214 franchised "Steak 'N Shake" brand restaurants throughout the United States, Europe, and the Middle East.  Defendant is also the registered owner of commercial real property identified as Folio 30-4933-109-0010[1] with the address 8701 SW 157 Avenue, Miami, Florida 33193.

## FACTS

6.	Defendant's 8701 SW 157 Avenue commercial property is built out as a Steak 'N Shake restaurant and Defendant is the operator/owner of the Steak 'N Shake restaurant located at that address.

7.	The Steak 'N Shake brand restaurants specialize in "Steakburgers" made from T-bone, sirloin, and round steaks. The Steak 'N Shake restaurant brand is known for

---

[1] The owner of the land is listed as Steak 'n Shake Operations, Inc., however this corporation filed an Amendment changing its name to Steak N Shake, Inc.

serving high quality burgers, fries, and soft drinks. At all times material hereto, Defendant has been the owner/operator of the Steak 'N Shake restaurant which is the subject of this instant complaint. Defendant's Steak 'N Shake restaurant is open to the public and therefore it is a place of public accommodation pursuant to 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104(2) as "[A] restaurant, bar, or other establishment serving food or drink." The Steak N Shake restaurant which is the subject to this action is also referred to as "Steak 'N Shake (restaurant)," "Steak 'N Shake," "Steak 'N Shake #479," "restaurant," or "place of public accommodation."

8.      As the owner/operator of a Steak 'N Shake restaurant which is open the public, Defendant is defined as a "Public Accommodation" within meaning of Title III because it is a private entity which owns and operates establishments serving food and drinks; 42 U.S.C. §12182, §12181(7)(B); 28 C.F.R. §36.104(2).

9.      Due to the close proximity to Plaintiff's home to the Steak 'N Shake #479 restaurant, on April 17, 2022 Plaintiff went to that restaurant with the intent of purchasing a meal and dining therein and to test for compliance with the ADA/ADAAG.

10.     While dining in and testing the Steak 'N Shake 8701 SW 157 Avenue location, Plaintiff met with multiple areas of inaccessibility and non-ADA compliance.

11.     Due to the inaccessible public spaces within Defendant's place of public accommodation Plaintiff has been denied full and equal access by Defendant.

12.     On information and belief, as part of the overall Steak 'N Shake corporate ownership of restaurants, Defendant is well aware of the ADA and the need to provide for equal access in all areas of its Steak 'N Shake #479 restaurant location. Therefore, its failure to reasonably accommodate mobility impaired and disabled patrons by insuring that its

restaurant is/was fully accessible is/was willful, malicious, and oppressive and in complete disregard for the civil rights of Plaintiff and in violation of 28 C.F.R. §36.303.

13. As a result of discrimination by Defendant, Plaintiff has suffered loss of dignity, mental anguish and other tangible injuries and has suffered an injury-in-fact.

14. Plaintiff continues to desire to patronize and/or test the Steak 'N Shake restaurant located at 8701 SW 157 Avenue, but continues to be injured in that he continues to be discriminated against due to the barriers to access within that place of public accommodation, all which are in violation of the ADA.

15. Any and all requisite notice has been provided.

16. Plaintiff has been obligated to retain the civil rights law office of J. Courtney Cunningham, PLLC and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred. Plaintiff is entitled to recover those attorney's fees, costs and expenses from Defendant pursuant to 42 U.S.C. §12205.

## COUNT I – VIOLATIONS OF TITLE III OF THE ADA

17. The ADA was enacted and effective as of July 26, 1990 and ADA legislation has been protecting disabled persons from discrimination due to disabilities since that time. Since 30 years have passed since enactment of the ADA, public accommodations and places of public accommodation have had adequate time for compliance.

18. Congress explicitly stated that the purpose of the ADA was to:

(i) provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
(ii) provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,
(iii) invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4).

19. Prior to the filing of this lawsuit, Plaintiff personally visited and tested the Steak 'N Shake restaurant located at 8701 SW 157 Avenue for compliance with the ADA/ADAAG, however Plaintiff was denied adequate accommodation because, as a disabled individual who utilizes a wheelchair for mobility, Plaintiff met barriers to access when he patronized/tested the restaurant. Therefore, Plaintiff has suffered an injury in fact.

20. Defendant has discriminated (and continues to discriminate) against Plaintiff by denying full and equal access to, and full and equal enjoyment of, goods, services, facilities, privileges, advantages and/or accommodations at the restaurant in derogation of 42 U.S.C. §12101 *et seq.,* and as prohibited by 42 U.S.C. §12182 *et seq.* by failing to barriers to access pursuant to 42 U.S.C. §12182(b)(2)(a)(iv), where such removal is readily achievable.

21. Plaintiff has been unable to, and continues to be unable to, enjoy full and equal safe access to, and the benefits of, the accommodations and services offered at the Steak 'N Shake #479 restaurant.

22. Defendant is governed by the ADA and must be in compliance therewith. Defendant has discriminated against Plaintiff, a disabled patron, in derogation of 28 C.F.R. Part 36.

23. Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991 (as amended), the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the Americans with Disabilities Act Accessibility Guidelines (hereinafter "ADAAG"), 28 C.F.R. Part 36, under

which said Department may obtain civil penalties of up to $75,000 for the first violation and $150,000 for any subsequent violation.

24. Defendant's commercial property and its Steak 'N Shake restaurant operating therein is in violation of 42 U.S.C. §12181 *et seq.*, the ADA and 28 C.F.R. §36.302 *et seq.*, and Defendant is discriminating against the Plaintiff as a result of *inter alia*, the following specific violations:

i. Plaintiff had difficulty transiting through the restaurant with his wheelchair towards the accessible table without assistance, as the isles between the customer eating tables do not maintain the clear width requirements which has resulted in the creation of barriers to access for individuals who are confined to wheelchairs or who use other mobility devices. Failure to maintain clear width of isles is a violation of Section 4.3.3 of the ADAAG and Section 403.5.1, 403.5.2 of the 2010 of the 2010 ADA Standards for Accessible Design.

ii. The exterior seating provided at the restaurant does not comply with the standards prescribed in Section 4.32 of the ADAAG and Sections 226 and 902 of the 2010 ADA Standards for Accessible Design. A minimum number of fixed or built-in seating or tables are required to be accessible (as defined by Section 4.1) and must comply with Section 4.32 which states that seating spaces for people in wheelchairs must provide clear floor space (Section 4.2.4), and that clear floor space shall not overlap knee space by more than 19 in (485 mm) (see Fig. 45). Section 4.2.1 states that the minimum clear floor or ground space required to accommodate a single, stationary wheelchair and occupant is 30 in by 48 in (760 mm by 1220 mm) (see Fig. 4(a)).

iii. Plaintiff had difficulty opening the restroom door, as it does not have the required door pressure. The restroom door opening force resulted in the need for excessive weight/force to open. This non-compliant door opening force is violative of Section 4.13.11(2)(b) of the ADAAG which states that the maximum force for pushing or pulling open an interior hinged door is 5 lbs. (22.2N). The 2010 ADA Standards for Accessible Design Section 404.2.7 states that operable parts on doors and gates must comply with Section 309.4, and Section 404.2.9 states that the force required to activate the door shall be 5 pounds maximum. Section 404.2.8.1 requires that door and gate spring hinges must be adjusted so that the time to move the door to a position of 12 degrees from the latch is 5 seconds minimum.

iv. Plaintiff had difficulty opening the (restroom) stall door, as it does not have the required door pressure. The stall door opening force resulted in the need for excessive weight/force to open. The door opening/closing force shall not be greater than that delineated at 28 C.F.R. Part 36.211. This is in violation of Section 4.13.11(2)(b) of the ADAAG and 2010 ADA Standards for Accessible Design Sections 404.2.7, 309.4, 404.2.9, and 404.2.8.1 as more fully delineated within the above sub-paragraph (iii).

v. Plaintiff had further difficulty opening the restroom door as the paper towel dispenser is encroaching over the maneuvering clearance of the pull side of the door. This is a violation of 4.13.6 of the ADAAG which delineates maneuvering clearances at doors, specifically as delineated within Fig.25(a) and Fig.25(b). Fig.25(a) depicts pull side maneuvering clearance front approach to be 60 inches on the approach and 18 inches to the side. Fig.25(b) depicts that the side approach of

7

        the pull side of the door requires a minimum of 36 inches to the side and 60 inches to the approach. This is also a violation of Section 404.2.4 (swinging doors maneuvering clearance) of the 2010 ADA Standards for Accessible Design.

vi. Plaintiff had difficulty closing the stall door as the toilet compartment (stall) door does not provide self-closing hinges. This is a violation of Section 604.8.1.2 of the 2010 ADA Standards for Accessible Design which states that toilet compartment doors shall be self-closing. This is also a violation of Sections 4.17.5 and 4.13.10 of the ADAAG. Section 4.17.5 states that toilet door hardware must comply with Section 4.13, and Section 4.13.10 states that door closers must take at least 3 seconds to move to a point of 3" from the latch.

vii. Plaintiff had difficulty closing the stall door, as the toilet compartment stall door was missing pull handles on both sides of the door near the latch. This is a violation of Section 4.27.4 of the ADAAG which states that controls and operating mechanisms shall be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist. The forces required to activate controls shall be no greater than 5 lb. (22.2 N). This is also a violation Section 604.8.1.2 of the 2010 ADA Standards for Accessible Design which states that toilet compartment doors, including door hardware, shall comply with Section 404; specifically, Sections 404.2.7 and 309.4: "operable parts of such hardware shall be 34 inches (865 mm) minimum and 48 inches (1220 mm) maximum above the finished floor or ground."

viii. Plaintiff had difficulty locking the stall door, as the locking hardware is non-compliant and requires grasping and turning of the wrist to operate. Failure to provide door hardware which is accessible to the disabled is a violation of the

       ADAAG and the 2010 ADA Standards for Accessible Design. Handles, pulls, and latches must have hardware in a shape that is easy to grasp with one hand as required by 28 C.F.R., Part 36 Section 4.13.9 and Section 4.27.4 which require controls and operating mechanisms to be operable with one hand and not require tight grasping, pinching, or twisting of the wrist, with force required to activate no greater than 5 lbs. Section 404.2.7 of the 2010 ADA Standards for Accessible Design states that door hardware must be operable with a closed fist or a loose grip and Section 309.4 states that operable parts are to be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist and have a force required to activate no more than 5 pounds.

ix. Plaintiff could not transfer to the toilet without assistance, as the required maneuvering clearance was not provided due to the encroaching item (trash can), which encroaches over the accessible water closet clear floor space. This is a violation of Section 4.16.2 of the ADAAG (which specifies the amount of space required at an accessible toilet, which includes clear floor space around fixtures) and Section 604.3.1 of the 2010 ADA Standards for Accessible Design which states that water closet clearance shall be 60 inches (1525 mm) minimum measured perpendicular from the side wall and 56 inches (1420 mm) minimum measured perpendicular from the rear wall).

x. Plaintiff could not transfer to the toilet without assistance, as the side wall grab bar is mounted at a non-compliant distance from the rear wall. This is a violation of Section 4.16.4 Figure 29(b) of the ADAAG and Section 604.5.1 of the 2010 ADA Standards for Accessible Design. Section 604.5.1 states that the side wall grab bar

        shall be 42 inches (1065 mm) long minimum, located 12 inches (305 mm) maximum from the rear wall and extending 54 inches (1370 mm) minimum from the rear wall.

xi. Plaintiff could not transfer to the toilet without assistance, as the rear wall grab bar is mounted at a non-compliant distance from the side wall. This is a violation of Section 4.16.4 Figure 29(a) of the ADAAG which depicts that the rear wall grab bar must be mounted 12 inches minimum from the side wall. This is also a violation of Section 604.5.2 of the 2010 ADA Standards for Accessible Design which states that the rear wall grab bar shall be 36 inches (915 mm) long minimum and extend from the centerline of the water closet 12 inches (305 mm) minimum on one side and 24 inches (610 mm) minimum on the other side.

xii. Plaintiff could not transfer to the toilet without assistance, as the side wall grab bar does not have the required clearance because the toilet tissue dispenser is mounted under the side wall grab bar which infringes on the required space. Wall-mounted objects such as toilet tissue dispensers can interfere with the use of grab bars if placed under grab bars. This is a violation of Section 4.26 of the ADAAG and Section 609.3 of the 2010 ADA Standards for Accessible Design which states that the space between the grab bar and projecting objects below and at the ends shall be 1½ inches (38 mm) minimum. Further, Section 4.26.2 Fig. 39(e) demarks the clear space under the grab bar shall be 1½ in (38 mm). In this instant case, the space between the wall and grab bar is not as required by section 4.26.2 Fig 39(e).

xiii. Plaintiff could not use the toilet tissue dispenser without assistance, as the toilet tissue dispenser is not in the proper position in front of the water closet or at the correct height above the finished floor, in violation of Section 4.16.6 and Fig. 29 of

       the ADAAG and Section 604 of the 2010 Standards for Accessible Design. Section 4.16.6 states that toilet paper dispensers shall be installed within reach, as shown in Fig. 29(b). Section 604.7 states that toilet tissue dispensers shall comply with Section 309.4 and shall be 7 inches (180 cm) minimum and 9 inches (230 cm) maximum in front of the water closet measured to the centerline of the dispenser. Further, the outlet of the dispenser shall be 15 inches (380 mm) minimum and 48 inches (1220 mm) maximum above the finished floor and shall not be located behind grab bars.

xiv.    Plaintiff was exposed to a cutting/burning hazard as the lavatory sink inside the stall does not have fully wrapped bottom sink pipes, therefore there is no proper insulation protecting users of that sink against the plumbing pipes under the sink. This is a violation of Section 4.19.4 of the ADAAG which states that hot water and drain pipes under lavatories shall be insulated or otherwise configured to protect against contact. This is also a violation of Section 606.5 of the 2010 ADA Standards for Accessible Design, because the lavatory pipes are not fully wrapped or maintained.

xv.    Plaintiff was additionally exposed to a cutting/burning hazard at the lavatory sink outside the stall because that sink also does not have fully wrapped bottom sink pipes. This is an additional violation of Section 4.19.4 of the ADAAG and Section 606.5 of the 2010 ADA Standards for Accessible Design, because the lavatory pipes are not fully wrapped or maintained.

25. Pursuant to 42 U.S.C. §12101 *et seq.*, and 28 C.F.R. §36.304, Defendant has been required to make its Steak N Shake restaurant accessible to persons with disabilities since January 28, 1992. Defendant has failed to comply with this mandate.

26. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff injunctive relief, including an order for Defendant to alter its commercial property and the Steak 'N Shake restaurant located therein such that it is made readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA.

**WHEREFORE,** Plaintiff Jesus Gonzalez demands judgment against Defendant Steak N Shake Inc. doing business as Steak 'N Shake #479 and requests the following relief:

a) The Court declare that Defendant has violated the ADA;

b) The Court enter an Order directing Defendant to evaluate and neutralize its policies, practices and procedures toward persons with disabilities,

c) The Court enter an Order requiring Defendant to alter its commercial property and the Steak 'N Shake restaurant located therein such that it becomes accessible to and usable by individuals with disabilities to the full extent required by the Title III of the ADA;

d) The Court award reasonable costs and attorneys fees; and

e) The Court award any and all other relief that may be necessary and appropriate.

Dated this 6th day of May, 2022

Respectfully submitted,

*/s/ J. Courtney Cunningham*
J. Courtney Cunningham, Esq.
J. COURTNEY CUNNINGHAM, PLLC
FBN: 628166

                                                8950 SW 74th Court, Suite 2201
Miami, Florida 33156
Telephone: 305-351-2014
Email: cc@cunninghampllc.com
*Counsel for Plaintiff*